UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
**CASE NO.: 11-21677-CIV-ZLOCH**

WARREN KING, et al.,
     Plaintiffs,
vs.

NCL (BAHAMAS) LTD.,
     Defendant.

_____/

## PLAINTIFFS' MOTION TO EXTEND STAY PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *WALLACE V. NCL*

COME NOW the Plaintiffs, WARREN KING, et al. ("Plaintiffs"), by and through undersigned counsel, and hereby file their Motion to Stay this action, pending the United States Supreme Court's decision in the related matter of *Wallace, et al. v. NCL (Bahamas), Ltd.,* 09-21814-CV-JORDAN. In support thereof, the Plaintiffs allege as follows:

On July 10, 2012, this Honorable Court entered an Order Staying this case, pending the outcome in the related matter of *Wallace, et al. v. NCL (Bahamas), Ltd.,* 09-21814-CV-JORDAN [D.E. 174] (hereinafter "*Wallace* case").

On January 9, 2014, the Court lifted the stay, noting that the Mandate has been returned by the Eleventh Circuit in the *Wallace* case. [D.E. 176].

On December 27, 2013, however, the Plaintiffs in the *Wallace* case filed a Petition for a Writ of Certiorari in the Supreme Court of the United States. For the reasons outlined below and to preserve judicial resources, the Plaintiffs respectfully request a stay of this case, pending the Supreme Court's review of their Petition for a Writ of Certiorari.[1]

**I.    The district court found NCL liable to the Plaintiffs for compensatory damages in the related matter of *Wallace*. However, the issue of whether NCL is also liable to the Plaintiffs for additional penalty wages is a question that remains in front of the U.S. Supreme Court.**

1.    This case involves a labor dispute between NCL (BAHAMAS) LTD. (hereinafter "NCL") and several of its Senior Stateroom Stewards regarding NCL's failure to pay the stewards their full wages between May 14, 2006 and June 14, 2009.

_____

[1] A copy of the *Wallace* Petition for a Writ of Certiorari is attached, as Exhibit "5."

2.      At all times material during the claim period, NCL assigned the Plaintiffs an amount of work which Plaintiffs – on their own -  could not be feasibly complete within the timeframe required by NCL, without the use of assistance or help from other crewmembers (hereinafter "helpers").

3.      Because at all times material during the claim period, NCL did not pay for these helpers, but rather required Plaintiffs to pay for helpers out of their own pockets; Plaintiffs were deprived of their full wages in violation of the Seaman's Wage Act, 46 U.S.C. §10313.

4.      Initially, Plaintiffs were unnamed proposed class members, and therefore passive beneficiaries in the matter of *Wallace, et. al. v. NCL (Bahamas) Ltd.,* 09-21814-CIV-JORDAN (hereinafter "the *Wallace* case"). Class certification, however, was ultimately denied in the *Wallace* case on December 30, 2010.

5.      As a result of the Court's denial of class certification, on April 6, 2011, fifty-seven (57) former proposed class members – the named Plaintiffs in this matter – moved to intervene into the *Wallace* case as formal parties. Although the Court held that the Motion for Intervention was timely, the Court denied (on other grounds) Plaintiffs' Motion for Intervention on May 10, 2011.

6.      Therefore in order to protect their interests, on May 10, 2011, Plaintiffs filed the present action - their own separate lawsuit.

7.      The *Wallace* case was tried in a bench trial in front of the Honorable Adalberto Jordan from September 12, 2011 through September 16, 2011.

8.      The *Wallace* Court entered its Findings of Fact and Conclusions of Law in *Wallace* on September 7, 2012. *See Wallace, et al. v. NCL (Bahamas), Ltd.,* 891 F.Supp.2d 1343 (S.D. Fla. Sep. 7, 2012), attached hereto as Exhibit "1."

9.      In the Findings of Fact and Conclusions of Law, the district court ruled in favor of the plaintiffs, finding that during a 3-year period, NCL implemented policies which deprived the plaintiffs of their wages in violation of the Seaman's Wage Act, 46 U.S.C. §10313. The district court also found that NCL withheld these wages in violation of the Convenant of Good Faith and Fair Dealing. *See Wallace*, 891 F.Supp.2d at 1350 (Exhibit "1"):

> I now conclude that, during the relevant claim period, NCL created a situation where it was nearly impossible for the plaintiffs to clean all their assigned cabins. Hence, NCL owes the plaintiffs the money that they used to pay helpers in order to timely complete their work … [I]t was a violation of the Seaman's Wage Act for NCL to assign the plaintiffs a quantum of work that could not be completed without the plaintiffs using

some of their wages to pay for helpers. In practice, NCL's actions constituted a withholding of wages under the Act. [2]

Accordingly, the district court ordered NCL, pursuant to 46 U.S.C. §10313(f), to reimburse the plaintiffs all of the money that they were required to spend on embarkation day helpers during the claim period, plus pre-judgment interest.[3] [4]

The district court in *Wallace*, however, did not award the plaintiffs penalty wages, pursuant to §10313(g). Since they prevailed in obtaining compensatory damages, the plaintiffs appealed the district court's decision regarding penalty wages only.  On October 1, 2013, the Eleventh Circuit Court of Appeals affirmed the district court's decision regarding penalty wages. *See Wallace, et al. v. NCL (Bahamas), Ltd.,* 733 F. 3d 1093 (11th Cir. 2012).

On December 27, 2013, the plaintiffs in *Wallace* filed a Petition for a Writ of Certiorari in the Supreme Court of the United States. The crux of the petition is whether the plaintiffs are entitled to additional penalty wages pursuant to §10313(g). *See* Exhibit "5."

The Petition is currently pending. As stay of this case is warranted pending the Supreme Court's decision in *Wallace*. Such result would be in the best interest of judicial economy, the convenience of the Court and the parties.

**II.    The factual and legal issues in this case and *Wallace* are identical. Since the issue of compensatory damages has already been decided in favor of the Plaintiffs; the only real issue this Court will have to decide is whether penalty wages are warranted.  A stay, pending the U.S. Supreme Court's review of the penalty wages issue is therefore in the best interest of judicial economy.**

---

[2] The district court also found that NCL did not keep its end of the bargain (in its contract with the plaintiffs), because it forced the plaintiffs to hire helpers to finish their work and to pay those helpers from their monthly wages. As a result, it held that NCL violated the duty of good faith and fair dealing immanent in every contract. *Wallace*, 891 F.Supp.2d at 1351 – 1353. By finding that NCL breached the Covenant of good faith and fair dealing, the district court effectively found that NCL's conduct was in bad faith. *See Continental Cas. Co. v. City of Jacksonville*, 550 F. Supp. 2d 1337 (Fla. 2007) ("The absence of good faith constitutes bad faith").

[3] The district court awarded the following compensatory damages: Abraham Wallace, $19,586.71; Adrian Nash, $19,269.56; Glenford Palmer, $18,339; Pauline Haughton, $19,349.12; Everol Barrant, $12,002.58; John James $7,854. *Wallace, et al. v. NCL (Bahamas), Ltd.,* 09-21814-CV-JORDAN [D.E. 393].

[4] Two relevant portions of the Seaman's Wage Act govern when a shipowner must pay a seafarer's wages: §10313(f) and §10313(g). Under section "f," the seaman is entitled to reimbursement of all wages unlawfully withheld by the shipowner. Moreover, if the shipowner's withholding is found to be "without sufficient cause," section "g" requires payment of additional penalty wages. Penalty wages consist in requiring the shipowner to pay penalties amounting to "2 days' wages for each day payment is delayed."

***Common questions of law and fact.*** Both the claimants in *Wallace* and in this matter are alleging that the same NCL policy (forcing them to hire and pay helpers out of their own earned wages) let to their injury (illegal de facto deduction of their wages). Thus, all claimants will need to adjudicate common questions of fact such as 1) whether NCL had an unwritten policy of requiring the plaintiffs to hire extra workers such that they were denied their full wages, and 2) whether NCL assigned unreasonable amounts of work within unreasonably short time frames, such that the work could not feasibly be completed without helpers. Moreover, all claimants will need to adjudicate common questions of law such as: 1) whether NCL's deduction of wages was a violation of the Seaman's Wage Act, and 2) whether NCL's deduction of wages was in breach of the covenant of good faith and fair dealing.

***Identical Documentary Evidence.*** To present their case, each of the plaintiffs in this case will be relying on virtually the same evidence – uncovered during the course of discovery in *Wallace* - and relied by the Plaintiffs in the *Wallace* case. For instance, they will use the same documentary evidence (i.e. Collective Bargaining Agreement applicable to all Senior Stateroom Stewards; NCL's written official policies and procedures re. workloads and timeframes, NCL's executives' memoranda, e-mails and deposition testimony) to prove NCL's conduct (NCL's unreasonable workloads and unreasonable timeframes).

***Identical Testimony.*** Further, as evidenced in Plaintiffs' record affidavits, the Plaintiffs testimony at trial will be virtually the same as the testimony of the plaintiffs in *Wallace.* That is, that NCL assigned each an unreasonable amount of work and required each Plaintiff to finish it within impossibly short time frames. As a result, in order to finish the work given to them they were forced to use and pay for helpers.

Moreover, a review of NCL's Trial Witness List reveals that NCL plans to call in this case the same witnesses that it called during the *Wallace* trial. A review of the affidavits of NCL's witness also reveals that their testimony will be the same as in the *Wallace* trial.

***NCL's defenses are the same as to all Claimants.*** As evidenced in NCL's Motion for Summary Judgment, and NCL's Response in Opposition to Class Certification, NCL will raise common – if not identical – defenses to all claimants in this action. These defenses are the same that it raised during the *Wallace* trial. In other words, NCL's defenses are not individualized to each claimant, but rather apply to all claimants (both in this case and in *Wallace*).

4

For instance, in *Wallace,* the Court rejected NCL's attempt (after trial) to introduce a video dated April 2012, showing one of its employees cleaning cabins on embarkation day. **NCL is relying on the exact same video in support of its Motion for Summary Judgment in this case**. *See* [D.E. 96]. The *Wallace* Court held that the video was inadmissible and irrelevant, in part because it was made 3 years after the claim period. *See Wallace, et al. v. NCL (Bahamas), Ltd.,* 09-21814-AJ [D.E. 386]:

> According to NCL, in April of 2012, it video recorded a steward "timely completing his work on embarkation day without helpers." This footage supposedly refutes the plaintiffs' testimony that it was impossible to hire helpers. Under *Scott v. Harris*, 550 U.S. 372, 380–81 (2007), NCL says, this refutation obliterates any dispute as to material facts and allows me to enter summary judgment in its favor … NCL's legal arguments are flawed at every step, both micro and macro-.

> … NCL's motion fails substantively. Its reliance on *Scott*, 550 U.S. at 380–81, in particular is improper. In *Scott*, video footage recorded a high-speed chase between Victor Harris and a county deputy. *Id.* at 374–75. At the summary judgment stage, Mr. Harris recounted the incident in a manner that the video footage squarely contradicted. The Supreme Court held that under such circumstances, a court need not give credence to Mr. Harris's tale for purposes of summary judgment. *See id.* at 378–79.

> The video footage in *Scott* is not the footage here. Unlike *Scott*, where the footage recorded the actual event that the parties disputed, **NCL's video does not record the plaintiffs' working condition**. It is a video of another steward, not any of the plaintiffs, cleaning cabins. **And the footage takes place *years* after the relevant claim period**. At trial, both parties made it clear that NCL changed its policies after the relevant claim period. Things, of course, could change in those years.

> Take the evidence with regard to junior stateroom stewards. At trial, the plaintiffs introduced evidence that junior stateroom stewards refused to help them clean cabins. That might have changed in four years. Or take the plaintiffs' testimony that passengers rarely left before 10 a.m. during the relevant period. That too could have changed in four years. **Given these variables, it is not clear that NCL's footage is relevant, let alone dispositive**.

Id., Exhibit "4" (Emphasis added).

## III.   Conclusion.

For the reasons set forth above, the Plaintiffs respectfully request this Honorable Court to stay of this case pending the U.S. Supreme Court's decision in *Wallace*. Such result would be in the best interest of judicial economy, the convenience of the Court and the parties.

## Certificate of Good Faith Conference Pursuant to Local Rule 7.1.

Counsel for Plaintiffs conferred with counsel for Defendant regarding the aforementioned relief. Counsel for Defendant represented his position as follows: "We will not oppose an extension of the stay in King once you send me confirmation from the Supreme Court's website that the petition in Wallace has been docketed."[5]

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that on January 9, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record, pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

LIPCON, MARGULIES,
ALSINA & WINKLEMAN P.A.
Attorneys for Plaintiff
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305)  373-3016
Facsimile: (305) 373-6204
E-mail: cllinas@lipcon.com

By:      s/ Carlos Felipe Llinás Negret
CARLOS FELIPE LLINÁS NEGRET
FLA. BAR. NO. 73545
MICHAEL A. WINKLEMAN
Florida BAR NO 36719

---

[5] The United States Supreme Court received the *Wallace* Petition For A Writ of Certiorari on December 30, 2013. On December 31, 2013, the Clerk returned copies of the petition to the plaintiffs mistakenly believing that an order was missing from the appendix. After clarification from counsel, the clerk acknowledged that the petition was complete and asked the plaintiffs to re-send the petition back to the Court. The Court received the copies of the Petition on January 8, 2013. The plaintiffs expect that the petition will be in the Court's official docket very soon.